**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

ANDRES GOMEZ,

      Plaintiff,

vs.

STEAK 'N SHAKE, INC. and
STEAK 'N SHAKE ENTERPRISES, INC.
d/b/a www.steaknshake.com,

      Defendants

---

## COMPLAINT

---

      COMES NOW Plaintiff Andres Gomez ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Steak 'n Shake, Inc. and Defendant Steak 'n Shake Enterprises, Inc. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the common law tort of trespass and alleges as follows:

### INTRODUCTORY STATEMENT

      1.     Plaintiff brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendants' business.

2.      Businesses can make choices (unlike visually impaired individuals) and can either make their business inclusive, or they can make them effective **Zones of Discrimination** and exclude the visually-impaired.

3.      When business owners do not take steps necessary to notice people of their businesses limitations to provide auxiliary aids and services, they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, i.e.: second-class citizens.

4.      This case arises out of the fact that Defendant Steak 'n Shake, Inc. and Defendant Steak 'n Shake Enterprises, Inc. have operated their business in a manner and way that completely excludes individuals who are visually impaired from access to Defendants' business based upon Defendants' failure to provide auxiliary aids and services for effective communications.

5.      This complaint seeks declaratory and injunctive relief to correct Defendants' policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendants' business so that Plaintiff (and other individuals who are visually impaired) can access and communicate with Defendants effectively and timely such that their access to places of public accommodation (which are the www.steaknshake.com website and Steak 'n Shake restaurants) are not impeded; as such impediment has rendered Defendants' business not fully accessible to the visually impaired.

6.      This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination by Defendant as a result thereof.

## JURISDICTION & VENUE

7.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendants' business.

8.      This is also an action with supplemental jurisdiction over related state law claim pursuant to 28 U.S.C. §1367.

9.       State law provides for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

10.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant Steak 'n Shake Enterprises, Inc. is conducting business within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District.

11.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant Steak 'n Shake, Inc. maintains several Steak 'n Shake restaurants within this district (either as direct owner/operator or as franchisor). In addition, the Defendant Steak 'n Shake, Inc. is authorized to conduct business within the state of Florida as a foreign profit corporation, pursuant to 28 U.S.C. §1391(b).

12.      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

### Andres Gomez

13.     Plaintiff Andres Gomez (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

14.     Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Plaintiff is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

15.     Plaintiff cannot use the computer/internet without the assistance of commercially available screen reader software to interface with the internet and websites located therein.

### Steak 'n Shake Inc.

16.     On information and belief, Defendant Steak 'n Shake, Inc. (also referenced collectively as "Defendants" along with co-Defendant Steak 'n Shake Enterprises, Inc.) is the owner, operator, and franchisor of a chain of fast food restaurants under the brand name "Steak 'n Shake." There are 544 Steak 'n Shake restaurants; 417 Steak 'n Shake restaurants are company-operated and 127 are franchised.

17.     Steak 'n Shake, Inc. owns, operates, and franchises places of public accommodation which are a chain of fast food restaurants under the brand name "Steak 'n Shake." Steak 'n Shake restaurants offer for sale to the public a hybrid of fast-food to-go service and diner-style sit-down service. Many Steak 'n Shake restaurants are open 24 hours a day, seven days per week. The menu features primarily hamburgers (steak is not

4

a menu item), milkshakes, deserts, and drinks, which is heretofore, referenced as "Steak 'n Shake food."

**Steak 'n Shake Enterprises, Inc.**

18.     On information and belief, Defendant Steak 'n Shake Enterprises, Inc. is a subsidiary of Defendant Steak 'n Shake, Inc.

19.     Defendant Steak 'n Shake Enterprises, Inc. (also referenced collectively as "Defendants" along with co-Defendant Steak 'n Shake, Inc.) is the owner and operator of the website www.steaknshake.com ("Website") which is directly connected to Steak 'n Shake restaurants since the Website provides a site locator to Steak 'n Shake restaurant physical locations (places of public accommodation). Thus, the Website has a true nexus to Steak 'n Shake restaurants.

## FACTS

20.     Plaintiff's disability limits major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

21.     At all times material hereto, Defendant Steak 'n Shake, Inc. was (and is) an organization which owns and operates, and is a franchisor of a chain of restaurants under the brand name "Steak 'n Shake," each of which is open to the public. As the owner, operate, and/or franchisor of restaurants, Defendant Steak 'n Shake, Inc.  is defined as a "Public Accommodation" within meaning of Title III because it is a private entity which owns and/or operates  "[A] restaurant, bar, or other establishment serving food or drink," 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2).

22.     By virtue of being a restaurant open to the public, each Steak 'n Shake restaurant is a place of public accommodation subject to the requirements of Title III of

the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(B) and 28 C.F.R. Part 36. Defendant's Steak 'n Shake restaurants are also referenced throughout as "Place(s) of Public Accommodation," "Steak 'n Shake restaurants," or "restaurant(s)."

23.     Defendant Steak 'n Shake Enterprises, Inc. controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.steaknshake.com ("Website").

24.     Defendant Steak 'n Shake Enterprises, Inc.'s Website permits the public to obtain formation regarding Defendant Steak 'n Shake Inc.'s business such as Steak 'n Shake menu and nutritional information on food, information on restaurant policies, purchase Steak 'n Shake gear (hats, t-shirts, and tumblers embossed with the "Steak 'n Shake" logo), join the Steak 'n Shake eclub for rewards, order online for in-restaurant pick up, and other information Defendant is interested in communicating to its customers. Another function of the Website is to provide auxiliary aids and services for the disabled.

25.     For all of the reasons as delineated hereinabove, clearly, the Website is an integral part of the provision of goods and services by Defendant Steak 'n Shake Inc. (through its owned and franchised restaurants). By this nexus, Defendant Steak 'n Shake Enterprises, Inc.'s Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(B) of the ADA[1].

---

[1] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

26.     Since the Website also permits the public to purchase Steak 'n Shake gear (hats, t-shirts, and tumblers embossed with the "Steak 'n Shake" logo), and Steak 'n Shake gift cards, the Website is also characterized as a sale establishment, which is a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(E).

27.     The Defendants must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the public.

28.     At all times material hereto, Defendant Steak 'n Shake Enterprises, Inc. was (and is) an organization owning and operating the Website. Since the Website is open through the internet to the public as part of Defendant Steak 'n Shake Inc.'s Places of Public Accommodation, Defendant Steak 'n Shake Enterprises, Inc. (as the owner and/or operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §12181(7)(B), and 28 C.F.R. §36.104(2).  Further as the Website is also defined as a sales establishment, Defendant Steak 'n Shake Enterprises, Inc. is also defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §12181(7)(E). As such, Defendant Steak 'n Shake Enterprises, Inc. has subjected itself and the Website it has created and maintains, to the Americans with Disabilities Act ("ADA").[2]

29.     Plaintiff is a customer who is interested in Steak 'n Shake food and thus is interested in the Steak 'n Shake restaurant located at SW 157th Street in Miami, Florida.

---

[2] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

30.     Plaintiff had called the Steak 'n Shake restaurant to inquire about the various Steak 'n Shake menu and nutritional information. Defendant's representative failed to fully assist Plaintiff and referred Plaintiff to its Website.

31.     During the month of June 2016, Plaintiff attempted on several occasions to utilize Defendant's Website to educate himself as to the Steak 'n Shake food available with the intent then going to one of the Steak 'n Shake restaurant locations to purchase a meal.

32.     The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).

33.     The Defendants' business contains access barriers that prevent the Plaintiff and other visually impaired individuals using keyboards and screen reading software from free and full use of Defendants' Website.

34.     The Plaintiff attempted to locate an *Accessibility Notice*[3] which would direct him to a webpage with contact information for disabled individuals who have questions, concerns or who are having difficulties communicating with Defendants.

35.     The fact that Plaintiff could not communicate with Defendants left him excluded from accessing the Steak 'n Shake physical restaurant locations, and left Plaintiff with the feeling of segregation, rejection, and isolation, as Plaintiff was unable to participate in the same manner as provided to the public.

---

[3] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

36.     The Plaintiff's inability to access and use accessible auxiliary aids and services has impeded and obstructed Plaintiffs ability to enjoy the goods and services at Steak 'n Shake restaurant locations. Plaintiff's inability to enjoy and learn about Steak 'n Shake food resulted in a "virtual" concrete barrier which has precluded Plaintiff's purchasing Defendants' goods and services. Plaintiff's inability to enjoy the Steak 'n Shake menu selection or consider purchasing Steak 'n Shake gear prior to entering Steak 'n Shake restaurant locations has hindered, impeded and inhibited Plaintiff's entry to Steak 'n Shake restaurants. Plaintiff has missed out on purchasing and enjoying Defendants' goods and services, and as such, Plaintiff has suffered particularized harm. Because Plaintiff cannot communicate with Defendants, Plaintiff has not had access to the menu selection nor to the coupons and specials on Steak 'n Shake food offered online for use in Steak 'n Shake restaurants.

37.     Plaintiff continues to desire to patronize Defendants, but is unable to do so, as he is unable to effectively communicate with the Defendants in order to obtain access to Steak 'n Shake physical restaurant locations in order to participate in the goods and services offered at Steak 'n Shake restaurants. Plaintiff's inability to communicate with / comprehend Defendant Steak 'n Shake Enterprises, Inc.'s Website has impeded Plaintiff's ability to patronize Steak 'n Shake restaurant physical locations.  As such, the Plaintiff (and others with vision impairments) will suffer continuous and ongoing harm from the Defendants' omissions, policies, and practices set forth herein unless enjoined by this Court.

38.     On information and belief, Defendants have not initiated an ADA policy to insure full and equal use of their business by individuals with disabilities.

39.     On information and belief, Defendants have not instituted an Effective Communications Committee to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

40.     On information and belief, Defendants have not designated an employee as an Accessibility Coordinator to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

41.     On information and belief, Defendants have not instituted an Auxiliary Aids and Services Accessibility User Testing Group to insure full and equal use of the Defendant's Auxiliary Aids and Services by individuals with disabilities.

42.     On information and belief, Defendants have not instituted an Automated Accessibility Testing program.

43.     On information and belief, Defendants have not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

44.     On information and belief, Defendants have not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendants will have the www.steaknshake.com website, Applications, and Digital Assets accessible to the visually impaired community.

45.     On information and belief, Defendants' Auxiliary Aids and Services do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web

accessibility[4].

46.     On information and belief, Defendants do not have an Axillary Aids and Services Accessibility Policy.

47.     On information and belief, Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Axillary Aids and Services.

48.     On information and belief, Defendants have not offered any other credible from of Auxiliary Aids and Services other than its Website.

49.     Thus, the Defendant have not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its business.

50.     Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

51.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the www.steaknshake.com website.[5]

52.     On information and belief, the Defendants are aware of the common access barriers and barriers to effective communication within its Auxiliary Aids and

---

[4] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

[5] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

Services, which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

53.     On information and belief, Defendants are aware of need to provide full access to all visitors to the www.steaknshake.com website which supports Steak 'n Shake restaurants.[6]

54.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

55.     Such barriers result in punishment and isolation of blind and low vision individuals from the rest of society.

56.     According to the National Federation for the Blind[7], there are over seven million Americans with visual disabilities, and there are over half a million people with visual disabilities living within the state of Florida.

57.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

58.     Notice to Defendants is not required as a result of Defendants' failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

---

[6] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (www.internetretailer.com/2016/04/01/web-accessibility-what-e-retailers-need-know) (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance)
[7] Statistics for 2012, see http://www.NFB.org/blindness-statistics

59.     Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

**Trespass Violations as to Defendant Steak 'n Shake Enterprises, Inc.**

60.     Plaintiff utilizes his personal computer to access websites such as Defendant Steak 'n Shake Enterprises, Inc.'s Website. Plaintiff uses his personal computer as a method of conveyance of his personal information. As such, Plaintiff stores his personal information and retains his browsing history on his personal computer.

61.     Throughout the Website, Defendant Steak 'n Shake Enterprises, Inc. has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits.

62.     Defendant Steak 'n Shake Enterprises, Inc. informs the Website user that the user's personal information and browsing history is collected is used for targeted marketing and advertising. Further, Defendant Steak 'n Shake Enterprises, Inc. discloses that any individual who accesses its website and commences to shop on that website is subject to having his/her personal information conveyed to third parties. According to the Website, those third parties include (but may not be limited to): (i) Defendant Steak 'n Shake Enterprises, Inc.'s related affiliated companies, subsidiaries, divisions or designees (without so naming those other companies / parties); (ii) third-party service providers (without so naming the service providers), (iii) to law enforcement officials (if so required to be transmitted by said law enforcement).

63.     The Plaintiff was unable to comprehend the Website; therefore, Plaintiff has/had no choice (and therefore no knowledge) of Defendant Steak 'n Shake

Enterprises, Inc.'s installation of software and collection of the website user's browsing history and analytics placed on the user's computer.

64.     Based upon the review of the Website, it is clear that, when a user accesses the Website, Defendant Steak 'n Shake Enterprises, Inc. installs software onto the user's computer.  It is clear that Defendant Steak 'n Shake Enterprises, Inc. has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history[8].

65.     As such, through its Website, Defendant Steak 'n Shake Enterprises, Inc. has committed a trespass against the Plaintiff since the Website places software on the Plaintiff's personal computer without Plaintiff's consent.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

66.     Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-59 above.

## Requirement for Effective Communication

67.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

68.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems."  28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of

---

[8] As delineated in the http://www.steaknshake.com/privacy section of the Website

making visually delivered material available to individuals who are blind or have low vision.

69.    Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

70.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

71.    Defendants' Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendants' Business is A Place of Public Accommodation**

72.    By virtue of the fact that Defendant Steak 'n Shake, Inc.'s restaurants are open to the public, each restaurant is a place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §12181(7)(B). The ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

73.    The virtual barrier to access is just as real as a physical barrier to access, for without information as to the goods and services offered and ability to investigate and

choose a restaurant, the visually impaired have no access to the goods and services of that restaurant, which is both a Public Accommodation and a Place of Public Accommodation.

### The Website As A Place of Public Accommodation

74.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[9]; see Statement of Interest filed by the Department in *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

75.     District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Gil v. Bang & Olufsen Am., Inc.,* No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to

_____

[9] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

dismiss).

76.     The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

77.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[10]; see Statement of Interest filed by the Department in *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

78.     The Website is a *Place of Public Accommodation* under pursuant to 42 U.S.C. §12181(7)(B) as it serves as an integral part of Defendant Steak 'n Shake Inc.'s restaurants by providing the public information on the various locations of Steak 'n Shake restaurants, and offers the public the ability to be educated as to the line of Steak 'n Shake food sold in Steak 'n Shake restaurants, which provides the public the ability to determine if they wish to physically patronize the Steak 'n Shake physical restaurant locations and to purchase Steak 'n Shake food.

---

[10] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

79.     The Website is also a *Place of Public Accommodation* under pursuant to 42 U.S.C. §12181(7)(E) as the public is able to purchase Steak 'n Shake gear and gift cards online (which meets the definition of 'sales establishment').

80.     Pursuant to 42 U.S.C. §12181(7)(B) and 42 U.S.C. §12181(7)(E) Defendant Steak 'n Shake Enterprises, Inc. is a *Public Accommodation* under the ADA because it owns and/or operates the www.steaknshake.com Website, as defined within §12181(7)(B) and 42 U.S.C. §12181(7)(E) (due to the Website's sale of gear and gift cards)   such that Defendant Steak 'n Shake Enterprises, Inc. is subject to the ADA.

81.     Further, due to the nexus of the Website to Defendant Steak 'n Shake, Inc.'s restaurants (to the extent that the public can order Steak 'n Shake food online for pick up at their closest Steak 'n Shake restaurant), Defendant Steak 'n Shake, Inc. is also a *Public Accommodation* under the ADA.

82.     In addition, representatives within Steak 'n Shake restaurant locations have referred customers to the Website for additional information, as the Website provides information regarding Steak 'n Shake food, such that the Website is an integral part of the public's needs with respect to Defendant's business.

83.     By Defendant Steak 'n Shake Inc.'s representatives (within its restaurants) referring the public /visually impaired individuals to Defendant Steak 'n Shake Enterprises, Inc.'s Website for reference to information on goods and services instead of providing such information at the physical restaurant locations, Defendant Steak 'n Shake Enterprises, Inc.'s Website has been rendered an integral part of Defendant Steak 'n Shake Inc.'s physical business locations. Thus, the failure of that Website to be accessible to visually impaired individuals impedes visually impaired individuals (such as the

Plaintiff) from fully accessing the Defendant Steak 'n Shake Inc.'s physical business locations.

84.     It is clear that the ADA applies to the Defendant Steak 'n Shake Enterprises, Inc.'s Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

85.     The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[11] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[12] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

---

[11] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

[12] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

86.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

87.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

88.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

89.     As a result of the inaccessibility of Defendant Steak 'n Shake Enterprises, Inc.'s Website, visually impaired individuals are denied full and equal access to Defendant Steak 'n Shake Inc.'s physical restaurant locations as Defendants have made

available to the public through the information provided on the Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

90.   Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible.

91.   A sampling review of just part of the revealed that the Website is not functional for users who are visually impaired.  The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

    1)   The language of the document is not identified,
    2)   Image alternative text is not present, and
    3)   A form control does not have a corresponding label.

92.   Further, the Website contains various types of PATs (prone to making the website inaccessible), which occur throughout the Website, such as:

    1)   Alternative text is likely insufficient or contains extraneous information,
    2)   An event handler is present that may not be accessible,
    3)   A heading level is skipped,
    4)   Flash content is present,
    5)   Adjacent links go to the same URL,
    6)   A link contains no text, and
    7)   Alternative text is likely insufficient or contains extraneous information.

93.   More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

94.   Further, the Website does not offer include the universal symbol for the

disabled[13] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

95.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic Auxiliary Aids and Services components to make the Website accessible would neither fundamentally alter the nature of Defendants' business nor would it result in an undue burden to the Defendants.

96.     The Defendants have violated the ADA (and continue to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendants' Auxiliary Aids and Services. These violations within the Website are ongoing.

**<u>Violations of the ADA</u>**

97.     As a result of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

98.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Andres Gomez injunctive relief; including an order to:

a)  Require Defendants to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.steaknshake.com website to a statement as to the Defendants' policy to

---

[13]   ™, or HTML "Accessibility" link for those individuals who are visually impaired

ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through the Website.

b) Require Defendant Steak 'n Shake Enterprises, Inc. to take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.steaknshake.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendants to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating Steak 'n Shake restaurants (locations) and becoming informed of Steak 'n Shake food online, of purchasing Steak 'n Shake gear and gift cards online, and of becoming a member of the Steak 'n Shake eclub and earn rewards. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendants to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from purchasing such goods and services made available to the public through the Steak 'n Shake physical restaurant locations.

99.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendants.

## COUNT II – TRESPASS AS TO DEFENDANT STEAK 'N SHAKE ENTERPRISES, INC.

100.     Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–65 above.

101.     Plaintiff's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant Steak 'n Shake Enterprises, Inc. on each and every date that the Plaintiff has accessed the www.steaknshake.com website.  Plaintiff's personal information has suffered a trespass due to the employment of software analytics by Defendant Steak 'n Shake Enterprises, Inc. which are present on Defendant's Website, which the Plaintiff has navigated.

102.     Plaintiff was unaware that the www.steaknshake.com website was placing software on his computer due to his inability to effectively communicate with the Website.

103.     Plaintiff did not consent to the placement of software on his personal computer; therefore Defendant Steak 'n Shake Enterprises, Inc. has committed a trespass against Plaintiff.

104.     By the acts described hereinabove, Defendant Steak 'n Shake Enterprises, Inc. has repeatedly and persistently engaged in trespass of the Plaintiff's personal property in violation of the common law.

105.     Defendant Steak 'n Shake Enterprises, Inc.'s installation, operation, and execution of software on Plaintiff's computer has impaired the condition and value of the Plaintiff's computer.

106.     At the Website location (http://www.steaknshake.com/privacy), the Defendant Steak 'n Shake Enterprises, Inc. states the following:

24

## Automatically Collected Information

"Some information is automatically received and sometimes collected from you when you visit our Website. This information may include some or all of the following items: the name of the domain and host from which you access the Internet, including the Internet Protocol (IP) address of the computer you are using and the IP address of your Internet Service Provider; the type and version of Internet browser software you use and your operating system; the date and time you access our Website, the length of your stay and the specific pages, images, video or forms that you access while visiting our Website; the Internet address of the website from which you linked directly to our Website, and if applicable, the search engine that referred you and any search strings or phrases that you entered into the search engine to find our Website; and demographic information concerning the country of origin of your computer and the language(s) used by it."

107.     As a direct and proximate result of Defendant Steak 'n Shake Enterprises, Inc.'s trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with the Plaintiff's property, Defendant Steak 'n Shake Enterprises, Inc. has injured and impaired on the condition and value of the Plaintiff's computer as follows:

   a)     By consuming the resources of an/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

   b)     By infringing on Plaintiff's right to exclude others from his computer;

   c)     By infringing on Plaintiffs right to determine (as owner of his computer) which programs should be installed and operated on his computer;

   d)     By compromising the integrity, security, and ownership of Plaintiff's computer; and

   e)     By forcing the Plaintiff to expend money time, and resources in order to remove the programs installed on his computer without notice or consent.

For all of the foregoing, the Plaintiff has no adequate remedy at law

**DEMAND FOR RELIEF**

**WHEREFORE,** Plaintiff Andres Gomez hereby demands judgment against Defendant Steak 'n Shake, Inc. and Defendant Steak 'n Shake Enterprises, Inc. and requests the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendants have violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendants to update the Website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendants to clearly display the universal disabled logo[14] within its Website, wherein the logo would lead to a page which would state Defendants' accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.steaknshake.com website;

d) The Court enter an Order compelling Defendants to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendants' policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendants are in compliance with the ADA;

---

[14] 

e) The Court enter an order requiring Defendants to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

f) The Court enter an Order directing Defendants to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendants to undertake and complete corrective procedures to the Website;

g) The Court enter an Order directing Defendants to establish a policy of web accessibility and accessibility features for the Website to insure effective communication for individuals who are visually impaired;

h) As to Defendant Steak 'n Shake Enterprises, Inc., the Court to declare that Defendant's actions, as set forth above, violate the Florida common law tort of trespass as alleged above in that the Website has placed unwarranted and unauthorized software on Plaintiff's computer without his consent;

i) As to Defendant Steak 'n Shake Enterprises, Inc., the Court to award injunctive and equitable relief as applicable, including:

   i.   prohibiting Defendant Steak 'n Shake Enterprises, Inc. from engaging in the acts alleged above;

   ii.   requiring Defendant Steak 'n Shake Enterprises, Inc. to provide effective communication to users of its Website such that individuals who are visually impaired have knowledge and notice

of Defendant Steak 'n Shake Enterprises, Inc.'s placement of software on their computer(s); and

j)  The Court award damages in an amount to be determined at trial;

k)  The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; and

l)  As to Defendant Steak 'n Shake Enterprises, Inc., the Court to award Plaintiff other equitable relief as the Court deems proper; compensatory damages sustained by Plaintiff; and permanent injunctive relief prohibiting Defendant from engaging in the conduct and practices of trespass as complained of herein;

m) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 11th day of April, 2017.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*